O

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11

12   NOSRATOLLAH SATVATI, et          CV21-8840-RSWL-PDx
     al.,
13                                    ORDER re: PLAINTIFFS'
               Plaintiffs,            MOTION TO REMAND [7]
14
15        v.

16   ALLSTATE NORTHBROOK
     INDEMNITY COMPANY, et al.,
17
                Defendants.
18

19        Nosratollah Satvati and Farideh Satvati

20   (collectively, "Plaintiffs") bring this Action against

21   Allstate Northbrook Indemnity Company ("Defendant")

22   alleging: (1) breach of contract; (2) breach of the

23   implied covenant of good faith and fair dealing; and (3)

24   violation of California Business and Professions Code

25   Section 17200.

26        Currently before the Court is Plaintiffs' Motion to

27   Remand ("Motion") [7].  Having reviewed all papers

28

                                   1

1  submitted pertaining to the Motion, the Court **NOW FINDS**
2  **AND RULES AS FOLLOWS:** the Court **DENIES** Plaintiff's
3  Motion.

4                          **I.   BACKGROUND**

5  **A.  Factual Background**

6       Plaintiffs allege the following in their Complaint:
7       Plaintiffs had an insurance policy with Defendant,
8  an insurance corporation, that was in effect from
9  September 29, 2018 to March 29, 2019 (the "Policy").
10 Notice of Removal, Ex. A ("Compl.") ¶ 5, ECF No. 1-1.
11 The Policy provided for Uninsured/Underinsured Motorists
12 ("UIM") coverage with bodily injury limits of $250,000
13 per person and $500,000 per accident. Id. ¶ 6.  On or
14 about November 17, 2018, Plaintiffs were involved in an
15 automobile accident in which their vehicle was struck by
16 an underinsured motorist, resulting in bodily injuries
17 to Plaintiffs that exceeded the maximum allowable policy
18 limits of the motorist who was at fault for the
19 collision.[1] Id. ¶ 7.

20      On or about November 21, 2018, Plaintiffs reported
21 this loss and the injuries sustained to Defendant.  Id.
22 ¶ 8.  On May 14, 2019, Plaintiffs demanded Defendant
23 settle their claims for the UIM policy limits of
24 $250,000 as per each person.  Id. ¶ 10.  Defendant
25 refused and counter-offered $12,973.04 for Nosratollah

26 _____

27      [1] In or about May 2019, Plaintiffs settled their claims
   against the underinsured motorist for his maximum allowable
28 policy limits, in an amount of $15,000 each.  Id. ¶ 9.

Satvati's ("Mr. Satvati") claim and $1,000 for Farideh
Satvati's ("Mrs. Satvati") claim. Id. ¶ 12.
Ultimately, Mr. Satvati settled his claim on February
17, 2021 for the maximum available policy limit of
$235,000.00[2] whereas  Mrs. Satvati arbitrated her claim,
receiving an award $48,873.60 on August 11, 2021. Id.
¶¶ 18, 23.  Defendant provided no explanation as to why
it took them 645 days to investigate Mr. Satvati's
claim. Id. ¶ 24.  Similarly, the arbitration process
for Mrs. Satvati's claim took approximately 695 days due
to Defendant's failure to cooperate. Id. ¶¶ 13-17, 22-
23.

Had Defendant agreed to settle Plaintiffs' claims
for a fair amount within a reasonable time after
Plaintiffs served their initial settlement demand on May
14, 2019, Plaintiffs would not have incurred the
additional fees and costs associated with pursuing their
UIM claims against Defendants. Id. ¶ 27.  Plaintiffs
incurred expenses for hiring experts, conducting a
deposition, arbitrator's fees, court reporting fees,
increased attorneys' fees due to being forced to resort
to arbitration, and various other costs. Id. ¶ 28.  By
refusing to compensate Plaintiffs for their claims in a
timely and reasonable manner, Defendants acted
fraudulently and maliciously, subjecting Plaintiffs to

---

[2] The amount Mr. Satvati received from the uninsured
motorist appears to be set off against the policy maximum of
$250,000.00.  See Compl. ¶¶ 9, 18.

cruel and unjust hardship.  Id. ¶ 29.

**B.  Procedural Background**

Plaintiffs filed their Complaint [1-1] in the Superior Court of California, County of Los Angeles on August 20, 2021 [1-7].  On November 2, 2021, Plaintiffs served Defendant with their Statements of Damages [1-5, 1-6].

On November 10, 2021, Defendant removed [1] this Action to this Court based on diversity jurisdiction. Plaintiffs filed the instant Motion to Remand [7] on December 10, 2021.  Defendant filed its Opposition [10] on December 21, 2021, and Plaintiffs replied [11] on December 28, 2021.

## II.  DISCUSSION

**A.  Legal Standard**

Civil actions may be removed from state court if the federal court has original jurisdiction.  See Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 33 (2002) ("Under the plain terms of § 1441(a), in order properly to remove [an] action pursuant to that provision, . . . original subject-matter jurisdiction [must] lie[] in the federal courts.").  Diversity jurisdiction exists in all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332.  There must be complete diversity of citizenship, meaning "each of the plaintiffs must be a citizen of a different state than

1  each of the defendants." <u>Morris v. Princess Cruises,</u>
2  <u>Inc.</u>, 236 F.3d 1061, 1067 (9th Cir. 2001) (citing
3  <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996)).
4  Federal question jurisdiction exists in "all civil
5  actions arising under the Constitution, laws, or
6  treaties of the United States." 28 U.S.C. § 1331.

7      "The burden of establishing jurisdiction falls on
8  the party invoking the removal statute, which is
9  strictly construed against removal." <u>Sullivan v. First</u>
10 <u>Affiliated Sec., Inc.</u>, 813 F.2d 1368, 1371 (9th Cir.
11 1987) (internal citations omitted). Courts resolve all
12 ambiguities "in favor of remand to state court." <u>Hunter</u>
13 <u>v. Philip Morris USA</u>, 582 F.3d 1039, 1042 (9th Cir.
14 2009) (citing <u>Gaus v. Miles, Inc.,</u> 980 F.2d 564, 566
15 (9th Cir. 1992)). A removed case must be remanded "[i]f
16 at any time before final judgment it appears that the
17 district court lacks subject matter jurisdiction." 28
18 U.S.C. § 1447(c).

19 **B.  Discussion**

20      1.  <u>There Is Complete Diversity</u>

21          a.  <u>Plaintiffs are California Citizens</u>

22      "To demonstrate citizenship for diversity purposes
23 a party must (a) be a citizen of the United States, and
24 (b) be domiciled in a state of the United States." <u>Lew</u>
25 <u>v. Moss</u>, 797 F.2d 747, 749 (9th Cir. 1986) (citations
26 omitted). "[A] person is domiciled in a location where
27 he or she has established a fixed habitation or abode in
28 a particular place, and intends to remain there

permanently or indefinitely." Id. at 749-50 (citing Owens v. Huntling, 15 F.2d 160, 162 (9th Cir. 1940).  A determination of an individual's domicile may also involve the consideration of a number of factors, including: current residence, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, place of employment or business, driver's license and automobile registration, and payment of taxes.  Id. at 750 (citation omitted).

Plaintiffs are domiciled in California here. According to their Complaint, Plaintiffs currently reside in California.  Compl. ¶ 1.  Further, Plaintiffs owned a condominium in Canoga Park, California, that Defendant insured for seventeen years.  Declaration of Glen Davis ("Davis Decl.") ¶ 3, ECF No. 10-2. Plaintiffs also purchased automobile insurance from Defendant for twenty years and had their policies sent to addresses in California.  Id.  Moreover, both the condominium and insurance policies issued to Plaintiffs showed California addresses.  Id.  Taken as a whole, these facts evidence Plaintiffs' fixed habitation in California and Plaintiffs raise no facts casting doubt on their intent to remain.  Accordingly, Plaintiffs are domiciled in California and are therefore citizens of California.  See Lew, 797 F.2d at 750 ("[D]omicile is evaluated in terms of objective facts, and . . . statements of intent are entitled to little weight when in conflict with facts.") (citations omitted); cf.

1   <u>Nieratko v. Ford Motor Co.</u>, 2021 WL 4438397, at *2 (S.D.
2   Cal. Sept. 28, 2021) (finding sufficient an allegation
3   of California citizenship where it was coupled with a
4   leasing agreement listing the plaintiff's address in
5   California); <u>see also</u> <u>Banuelos v. Staples, Inc.</u>, 2015 WL
6   226029, at *5 (C.D. Cal. Jan. 16, 2015) (finding
7   California citizenship based on residency and employment
8   in California for over twenty years).
9       Plaintiffs argue that they are not citizens of
10  California by drawing a distinction between citizenship
11  and residency, Mot. 14:1-3, but this argument is
12  unavailing.  While the Ninth Circuit has not expressly
13  adopted a presumption treating a person's residence as
14  prima facie evidence of their domicile, it has
15  instructed that "courts should consider the entire
16  record to determine whether evidence of residency can
17  properly establish citizenship."  <u>See</u> <u>Mondragon v. Cap.</u>
18  <u>One Auto Fin.</u>, 736 F.3d 880, 886 (9th Cir. 2013)
19  (citation omitted).  As stated above, a consideration of
20  the entire record here, in addition to Plaintiffs'
21  California residency, suggests that Plaintiffs are
22  indeed citizens of California.  The Court finds that
23  Plaintiffs are California citizens.
24
25  ///
26  ///
27  ///
28  ///

b.   <u>Defendant Is a Citizen of Illinois</u>

A corporation is a citizen of every State in which it is incorporated and where it has its principal place of business.  28 U.S.C. § 1332.  A corporation's principal place of business is where its officers "direct, control and coordinate the corporation's activities."  <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 92-93 (2010).  The principal place of business is the corporation's "nerve center" and is normally where the corporation maintains its headquarters, "provided that the headquarters is the actual center of direction, control, and coordination . . . ."  <u>Id.</u> at 93.

Defendant is a citizen of Illinois here. Defendant's Vice President, Assistant General Counsel, and Assistant Secretary Daniel Gordon declared based on his personal knowledge that Defendant is "incorporated under the laws of the State of Illinois" and Defendant's "principal place of business is in Cook County, Illinois."  Declaration of Daniel G. Gordon ("Gordon Decl.") ¶ 1-2, ECF No. 10-4.  Accordingly, by both its state of incorporation and its principal place of business, Defendant is a citizen of Illinois.  <u>See</u> <u>Koop v. Amco Ins. Co.</u>, 2016 WL 3500121, at *3 (N.D. Cal. June 27, 2016) (accepting a declaration from a defendant's Vice President and Assistant Secretary to establish state of incorporation and principal place of business).

Given that Plaintiffs are citizens of California and Defendant is a citizen of Illinois, there is

1    complete diversity between the parties.

2        2.   Defendant's Notice of Removal was Timely

3        Typically, a defendant must file a notice of

4    removal within thirty days after service of the

5    complaint.  28 U.S.C. § 1446(b)(1).  Where the case is

6    not initially removable, however, a defendant may file a

7    notice of removal within thirty days after receipt of

8    "an amended pleading, motion, order or other paper from

9    which it may first be ascertained that the case is one

10   which is or has become removable."  Id. § 1446(b)(3).

11       Under Ninth Circuit jurisprudence, the "thirty day

12   time period for removal starts to run from [a]

13   defendant's receipt of the initial pleading only when

14   that pleading affirmatively reveals on its face the

15   facts necessary for federal court jurisdiction."  Harris

16   v. Bankers Life and Cas. Co., 425 F.3d 689, 690-91 (9th

17   Cir. 2005) (citations omitted).  Accordingly,

18   removability under § 1446(b)(1) is analyzed through

19   "examination of the four corners of the applicable

20   pleadings, not through subjective knowledge or a duty to

21   make further inquiry."  Id. at 694.

22       Defendant's Notice of Removal was timely here.  The

23   Complaint did not specify an amount in controversy

24   whatsoever.  See generally Compl.  It was not until

25   Defendant received Plaintiffs' Statements of Damages on

26   November 2, 2021, that Defendant was apprised of the

27   amount in controversy and that it exceeded $75,000.  See

28   generally Statements of Damages, ECF Nos. 1-5, 1-6

(stating damages in excess of $2 million combined for both Plaintiffs).  Therefore, Plaintiffs' Statements of Damages constituted "other papers" from which removability was first ascertainable under § 1446, and Defendant removed this Action well within thirty days of November 2, 2021, on November 10, 2021.  See generally Notice of Removal, ECF No. 1.

To avoid federal jurisdiction, Plaintiffs argue that removal was untimely because Defendant should have surmised from the Complaint that damages exceeded the jurisdictional minimum.  Mot. 17:17-18.  Plaintiffs state that a "reasonable amount of intelligence" would have indicated that the Complaint exceeded the $75,000 threshold and therefore Defendant cannot "plead ignorance."  Id. at 21:3-7.  But courts in this circuit have routinely stated that "[w]hen the face of the complaint does not reveal whether the case is removable, the defendant is not obligated to investigate the matter within the initial 30 days to make this determination."  Avans v. Foster Wheeler Const. Co., 2010 WL 3153972, at *3 (E.D. Cal. Aug. 6, 2010); accord Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1141 (9th Cir. 2013) ("The fact remains, however, that we 'don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove.'" (quoting Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006))); Riggs v. Cont'l Baking Co., 678 F. Supp. 236, 238 (N.D. Cal. 1988) ("The

elements of removability must be specifically indicated in official papers before the statutory period begins to run."). As such, Plaintiffs demands for attorneys' fees, emotional distress damages, and punitive damages in the Complaint were not sufficient to put Defendant on notice that the amount in controversy exceeded $75,000. See, e.g., Washington v. Allstate Ins. Co., 2010 WL 4137286, at *1, 2 (E.D. Cal. Oct. 19, 2010) (holding plaintiffs' complaint "alleging special damages, general damages, punitive damages, and attorney's fees" after four-year long arbitration wherein plaintiffs were awarded $506,015 "[wa]s inadequate to provide a defendant with notice that the amount in controversy [exceeded $75,000]"); Bullard v. Allstate Ins. Co, 2006 WL 3734359, at *3-4 (N.D. Cal. Dec. 18, 2006) (holding that a complaint alleging "various damages including the costs of arbitration, emotional distress damages, punitive damages, additional medical expenses, and lost earnings" was insufficient to reveal an amount in controversy exceeding $75,000).

    In sum, the Complaint was not sufficient to trigger the initial thirty-day removal period. Plaintiffs' Statements of Damages served on November 2, 2021 constitute "other papers" from which Defendant could have first ascertained the removability of the underlying litigation. Because Defendant's Notice of Removal was filed within thirty days of November 2, 2021, removal was timely. See, e.g., Avans, 2010 WL

1   3153972 at *7 (same).  Given that the parties are

2   diverse, the jurisdictional amount is met, and removal

3   was timely, this Court has removal jurisdiction and

4   **DENIES** Plaintiffs' Motion to Remand.

5        3.   <u>Sanctions</u>

6        Both parties demand sanctions and the Court **DENIES**

7   both requests.

8        Plaintiffs argue Defendants should be sanctioned

9   for the erroneous removal of this case.  Mot. 25:4-5.

10  Considering that removal was proper here, this request

11  is **DENIED as moot.**

12       Next, Defendants argue that Plaintiffs' Motion for

13  Remand was frivolous and therefore sanctions or,

14  alternatively, an Order to Show Cause why sanctions

15  should not be imposed, is warranted.  Opp'n 25:6-26:2.

16  The Court **DENIES** Defendant's sanctions request given

17  that a separate motion for sanctions has not been filed.

18  Additionally, the Court **DENIES** Defendant's request for

19  an Order to Show Cause why sanctions should not be

20  imposed against Plaintiffs for filing their Motion to

21  Remand considering that sanctions under Federal Rule of

22  Civil Procedure ("Rule") 11 should be reserved for only

23  "rare and exceptional case[s] where the action is

24  clearly frivolous, legally unreasonable or without legal

25  foundation, or brought for an improper purpose."

26  <u>Operating Eng'rs Pension Trust v. A-C Co.</u>, 859 F.2d

27  1336, 1344 (9th Cir. 1988).

28  ///

1

### III.   CONCLUSION

2

3      Based on the foregoing, the Court DENIES  Plaintiffs'

4  Motion to Remand.   The Court also DENIES each party's

   request for sanctions.

5      **IT IS SO ORDERED.**

6

7

8  DATED: March 9, 2022          _____/s/ Ronald S.W. Lew_____

9                                **HONORABLE RONALD S.W. LEW**
                                 Senior U.S. District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28